IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 22, 2010

# TIMOTHY D. McGLORY v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Rutherford County**
**No. F-62303      Don Ash, Judge**

**No. M2009-01220-CCA-R3-PC - Filed February 28, 2011**

Petitioner, Timothy D. McGlory, was convicted following the entry of his guilty pleas to attempted second degree murder and possession of a Schedule I drug for resale. Pursuant to the plea agreement, Petitioner was sentenced to 12 years for his attempted second degree murder conviction and eight years for the drug offense, and his sentences were ordered to be served concurrently, for an effective sentence of 12 years. Petitioner now appeals from the post-conviction court's dismissal of his petition for post-conviction relief, in which he alleged that his guilty pleas were involuntarily entered; that the prosecution failed to disclose evidence favorable to Petitioner; and that he was denied the effective assistance of counsel. After a careful review of the record, we conclude that Petitioner is not entitled to relief and affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which JERRY L. SMITH and J.C. MCLIN, JJ., joined.

Mary Frances Parker, Murfreesboro, Tennessee, for the appellant, Timothy D. McGlory.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany Faughn, Assistant Attorney General; William C. Whitesell, Jr., District Attorney General; and J. Paul Newman, Assistant District Attorney General, for the appellee, the State of Tennessee.

## OPINION

*Guilty Plea Hearing*

At Petitioner's guilty plea hearing, the State gave the following as a factual basis for Petitioner's guilty pleas:

Had this matter gone to trial the State would have introduced witnesses to include Detective John Liehr of the Smyrna Police Department who the State believes would testify as follows. That on or about June 26th, 2007, that there was a drug transaction supposed to take place in which Mr. McGlory along with another co-defendant were to provide drugs to a Mr. Youngblood and some of the people he was associated with. Mr. Youngblood apparently and the people he was associated with were going to try and short the persons who were selling the drugs as far as paying them the money. There was a problem during the transaction. The transaction didn't take place. But Mr. McGlory and the other person did have the drugs with them. Therefore, the charge of possession of drugs which was ecstasy. After that happened then there was a discussion about going back and taking care of those guys who tried to short us. Those guys being Mr. Youngblood and the people he was with. They went back and they did confront Mr. Youngblood. One of the other co-defendants kept Mr. Youngblood and detained him there until Mr. McGlory could get there. Mr. McGlory got there, according to the witnesses, and Mr. McGlory then shot into the car striking Mr. Youngblood. I believe he shot multiple times. Mr. Youngblood was injured. Had to be hospitalized. And did suffer serious injuries. And all these events occurred here in Rutherford County, state of Tennessee and prior to return of this indictment.

*Post-Conviction Hearing*

At the hearing on Petitioner's petition for post-conviction relief, Petitioner's trial counsel testified that she had been appointed to represent Petitioner in general sessions and circuit court on charges of attempted first degree murder, felony possession of ecstasy, and possession of a weapon as a convicted felon. At the time of the hearing, counsel had been practicing law for 19 years. Counsel testified that at the preliminary hearing, there was testimony that Petitioner was driving the vehicle with a female passenger in the front seat of the car who testified that Petitioner had been in possession of the drugs. There was also testimony that Petitioner and co-defendant McCutcheon later went to Food Lion where they were involved in a "shooting altercation."

Counsel testified that she met with Petitioner on two or three occasions to discuss the State's plea offer and discovery. She reviewed a lab report and the statements of various witnesses in the discovery responses provided by the State. She testified that she interviewed witnesses and spoke to the victim, Mr. Youngblood. In her investigation, she learned that two witnesses and the victim identified Petitioner as the shooter. Counsel testified that she conveyed the State's plea offer to Petitioner, and she explained that pleading guilty to the

drug charge would not require him to do any additional time because it would run concurrently with the attempted murder charge, but she did not advise him to accept the offer. Counsel further testified that Petitioner was incarcerated at the time he entered his pleas, and that he did not appear to be under the influence of any drugs or other intoxicants.

Petitioner's co-defendant James McCutcheon testified that on the day of the offense, he and Defendant were in separate vehicles. He testified, "we went over there to meet the guys that tried to rob him for the X pills." Mr. McCutcheon testified that he did not have a gun in his possession and that he did not shoot the victim. He testified that he had written a letter to Petitioner while Petitioner was in jail stating that Mr. McCutcheon did, in fact, shoot the victim and apologizing to Petitioner for not admitting his responsibility. However, at the post-conviction hearing, Mr. McCutcheon denied that he was the shooter, explaining that he wrote the letter to Petitioner because he had already been convicted and sentenced, and he believed that he could not be charged again, therefore, he was "trying to help [Petitioner] out" by taking the blame as the shooter. He had planned to testify that he was the shooter at the post-conviction hearing until his attorney advised him that he could be charged with perjury. He also testified that Defendant offered him $2,000 to take the blame for the shooting and presented a letter to the court that he testified Petitioner had written to him. In the letter to Mr. McCutcheon, Petitioner stated that he did not have $2,000 and that he could pay him $50 per month, but the letter does not state anything about having Mr. McCutcheon lie about the offense. Petitioner did not testify at the post-conviction hearing.

Glory Nolan, Petitioner's girlfriend, testified that Petitioner had written her "numerous" letters while in jail and that she was familiar with Petitioner's handwriting. She testified that the letter produced by Mr. McCutcheon was not written by Petitioner. Petitioner did not testify at the post-conviction hearing.

At the conclusion of the hearing, the trial court denied the petition, finding that Petitioner provided no proof in support of his claim that his guilty pleas were involuntary. The court also found that Petitioner further failed to provide any proof in support of his allegation that the State failed to disclose exculpatory evidence. Regarding Petitioner's claim that his trial counsel was ineffective, the court concluded that Petitioner failed to prove that counsel's performance was deficient. In a written order, the post-conviction court specifically found that Petitioner offered no proof of his assertion that counsel failed to file a pre-trial discovery motion as asserted in his petition, and the court concluded that, based on the testimony at the hearing, counsel's investigation was adequate.

*Ineffective Assistance of Counsel*

In this appeal, Petitioner asserts only one of his original claims for post-conviction relief, and that is that the trial court erred by denying his claim that counsel provided ineffective assistance. Our scope of review will be limited to that issue.

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

To establish entitlement to post-conviction relief via a claim of ineffective assistance of counsel, the post-conviction petitioner must affirmatively establish first that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and second that his counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668 , 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id*. at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When reviewing a claim of ineffective assistance of counsel, we will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Applying the above principles to the facts of this case, we conclude that Petitioner failed to prove by clear and convincing evidence that his trial counsel provided ineffective assistance of counsel. Trial counsel testified that she obtained discovery and reviewed it with Petitioner. She further interviewed several witnesses and met with Petitioner two or three times prior to the plea hearing. She conveyed the State's plea offer to Petitioner and

explained to him the consequences of such guilty pleas. The trial court found that trial counsel did not advise Petitioner to "take the plea." The record supports the trial court's findings that trial counsel's performance was not deficient. Moreover, Petitioner failed to provide any evidence that, even if counsel's performance was deficient, he was in any way prejudiced by the deficient performance. Petitioner is not entitled to relief in this appeal.

## CONCLUSION

For the reasons stated, the judgment of the post-conviction court is affirmed.

_____
THOMAS T. WOODALL, JUDGE